**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
**LUFTHANSA CARGO AG, et al.,**

                      Plaintiffs,

                                    **MEMORANDUM AND ORDER**

           -against-                                12-CV-4869 (RJD)

**TOTAL AIRPORT SERVICES, INC.,**

                      Defendant.
----------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

       On September 30, 2014, the undersigned magistrate judge denied a motion by defendant Total Airport Services, Inc. ("defendant") to reopen fact discovery, which had closed five months earlier. See Minute Entry (Sept. 30, 2014) ("9/30/14 Minute Entry"), Electronic Case Filing ("ECF") Docket Entry ("DE") #80. In that same ruling, the Court also held that new evidence fortuitously discovered by defendant during a court-ordered inspection of an aircraft, but outside the bounds of the authorized inspection, should not be allowed into evidence at trial. See id. Now, defendant moves this Court to reconsider its prior rulings. See Letter Motion (Oct. 8, 2014) ("Def. Mot."), DE #81; Letter Motion Reply (Oct. 16, 2014) ("Def. Reply"), DE #84. Plaintiffs Lufthansa Cargo AG and Delvag Luftfahrtversicherungs AG (collectively, "plaintiffs" or "Lufthansa") object to defendant's motion in its entirety. See Letter Opposition to Defendant's Motion (Oct. 14, 2014) ("Pl. Opp."), DE #82.

       For the reasons stated below, the Court grants in part and denies in part defendant's motion for reconsideration.

**BACKGROUND**

I.     **Defendant's Request to Inspect A Similarly Structured Aircraft**

The central issue in this case is and has been whether it was reasonable for plaintiffs to repair their damaged MD-11 freighter aircraft in the manner that they did. Accordingly, each side retained experts to opine on the appropriate method(s) of repair. On July 17, 2014, plaintiffs served defendant with an unauthorized, untimely rebuttal report by plaintiffs' expert, Dr. Mark J. Viz ("Viz"), criticizing the methodology and analyses of defendant's experts, Kamala Meader ("Meader") and Jason Michael ("Michael"). See Letter Request for Conference (July 17, 2014), DE #57.

Thereafter, defendant requested that Meader and Michael be permitted to serve rebuttal reports responding to Viz's criticisms; in this connection, a dispute arose between the parties (as so often does in this case)[1] concerning defendant's belated request to inspect an aircraft that was structurally similar to the one at issue in this case. See Memorandum and Order (Sept. 10, 2014) ("9/10/14 M&O"), DE #78; see also Defendant's Request for Access and Entry to Property Pursuant to Fed. R. Civ. P. 34 (Sept. 3, 2014), DE# 81-1. It was undisputed that defendant had never made such a request during the fact discovery period, which ended months earlier in April 2014. See Order re Proposed Schedule (Mar. 7, 2014), DE #44. Ultimately, however, plaintiffs agreed to make such an aircraft available. See 9/10/14 M&O at 2. This

---

[1] This current motion is just one of a series of disputes that have plagued the expert discovery period, straining judicial resources, increasing costs for both parties and delaying trial. See, e.g., Minute Order (July 18, 2014), DE #63; Order to Show Cause (July 24, 2014), DE #65.

aircraft bore registration D-ALCR[2] and was located in Victorville, California. See id. In an opinion issued on September 10, 2014, this Court authorized the inspection. See id. at 4.

## II. The Inspection and Resulting Dispute

On September 30, 2014, during the inspection of D-ALCR, defendant's experts noticed that the aircraft had been repaired in a manner that they believed to be similar to one of the methods they are proposing should have been utilized in this case. See 9/30/14 Minute Entry.[3] Defendant requested that the relevant panels of D-ALCR be removed in order to allow the defense experts to take internal measurements and photographs of this newly discovered repair. See id. Plaintiffs objected to having defendant's experts inspect this other repair, as it was both outside the scope of the Inspection Notice's delineated inspection area and not contemplated by the Court's September 10, 2014 order authorizing the inspection.

The parties telephoned the Court that day from the inspection site, seeking a resolution of their dispute. See generally 9/30/14 Minute Entry. Defendant's counsel, James Lare ("Lare"), stated that the observed repair was relevant because it refuted the deposition testimony of plaintiffs' corporate representative, who had testified, among other things, that "Lufthansa does not fly with repaired aircraft" and that "all of [plaintiffffs'] aircraft [were in

---

[2]  Although the MD-11 aircraft that is the subject of this lawsuit bore the registration D-ALCN, plaintiffs confirmed that D-ALCR is structurally similar to D-ALCN in the affected area. See 9/10/14 M&O at 2 n.1.

[3]  Defendant's experts had earlier opined on, *inter alia*, less-extensive and less-costly repair options that they claimed were consistent with the applicable Structural Repair Manual ("SRM"); plaintiffs' expert opined that the damage to D-ALCN was too extensive for an SRM repair and that the defense options would not have returned the aircraft to its pre-damage design service condition.

their] original state." See Transcript of Hearing (Sept. 30, 2014) ("9/30/14 Tr.") at 4-5, DE #86. The Court noted, however, that Lare had earlier described the Victorville, California, inspection location as a "bone yard for retired airliners" — meaning that D-ALCR may not have flown while repaired and, thus, the D-ACLR repair may not have been inconsistent with the cited testimony. See id. at 9-10; see also id. at 2. The Court further expressed its concern that if it belatedly reopened discovery to allow a defense inspection and expert opinion on this new D-ALCR repair, then, in fairness, plaintiff would be entitled to respond, creating "a whole sideshow on a sideshow." See id. at 10.

Immediately following its ruling, the Court nevertheless granted Lare's request that the defense experts be allowed to photograph and measure the D-ACLR repair, for the limited purpose of creating a record for any litigation of this dispute before the District Court and in order to avoid the need to return to Victorville in the event a defense objection were sustained. See 9/30/14 Tr. at 12. But in so allowing defendant to preserve the evidence, the Court noted that, with fact discovery closed, it would be unfairly prejudicial to allow defendant to use the photographs and measurements of the D-ALCR repair at trial. See id. at 12; see also 9/30/14 Minute Entry (noting that "defendant should not be allowed to offer evidence concerning th[e] repair" where "the relevance of the results of the disputed supplemental inspection cannot be determined" absent further fact discovery).

### III. Defendant's Motion for Reconsideration

Defendant now moves this Court for reconsideration of its September 30, 2014 ruling. See generally Def. Mot. Most notably, defendant requests that the undersigned magistrate

judge "reopen discovery for the limited purpose of obtaining the historical records for D-ALCR" and reconsider its ruling regarding the admissibility of the D-ALCR repair. See id. at 1.

Defendant bases its motion on newly uncovered publicly available photographs suggesting that, although the D-ALCR aircraft was located in an airplane "bone yard" at the time of inspection, it had been in "active service" with the repair since at least July 2011. See Def. Mot. at 3. Thus, defendant contends, those photographs demonstrate that the testimony of plaintiffs' Rule 30(b)(6) witness, Dieter Hammer ("Hammer") --- to the effect that Lufthansa does not fly with repaired aircraft — was false. See id. Defendant claims that it needs the historical records (including D-ALCR's logbooks) to "test the truth of the statements made by [Hammer]." See id. at 4. Defendant also argues that the requested fact discovery would assist defendant in addressing the reliability of plaintiffs' expert and would give defendant's own experts additional information on the damage incurred by D-ALCR. See id.

In opposition, plaintiffs contend that defendant has not shown good cause for reopening fact discovery. See Pl. Opp. at 2. Among other things, plaintiffs argue that Hammer admitted in his testimony that he was not familiar with structural repairs to plaintiffs' aircraft, while a second Rule 30(b)(6) witness, Andreas Grubert ("Grubert"), testified that plaintiffs' active fleet included aircraft that had sustained structural damage; despite Grubert's testimony, defendant failed to follow up with additional document or informational requests on this issue. See id. at 3-4.

**DISCUSSION**

It is undisputed that defendant's motion for reconsideration rests in large part on new evidence -- i.e., documents showing that the D-ALCR aircraft had in fact been flying for a period of time after the observed repairs had been made -- that was not available when the parties first presented their dispute to the Court during the September 30th telephone conference. See, e.g., Estiverne v. Goodwine, No. 06-CV-6617 (NG), 2012 WL 1324762, at *2 (E.D.N.Y. Apr. 17, 2012) (noting that courts in this Circuit have held that reconsideration is proper where, *inter alia*, "new evidence is available") (citations omitted). For that reason, the Court has reconsidered the ruling rendered during that conference, but, for the following reasons, declines to reopen discovery.

Where, as here, a scheduling order has been entered by the Court pursuant to Rule 16(b) of the Federal Rules of Civil Procedure, the court-ordered schedule "may be modified only for good cause. . . ." Fed. R. Civ. P. 16(b)(4). As the Second Circuit has reiterated, "[a] finding of good cause depends on the diligence of the moving party." Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003) (collecting cases); see also Jeannite v. City of N.Y. Dep't of Bldgs., No. 09 Civ. 3464 (DAB)(KNF), 2010 WL 2542050, at *2 (S.D.N.Y. June 21, 2010) (noting that courts in this circuit, in assessing a request to modify a scheduling order, also consider, *inter alia*, the imminence of trial and prejudice to the non-moving party). "In other words, an application to reopen discovery should be denied where the moving party 'has not persuaded th[e] Court that it was impossible to complete the discovery by the established deadline.'" Gotlin v. Lederman, No. 04-CV-3736 (ILG), 05-CV-1899 (ILG),

2007 WL 1429431, at *3 (E.D.N.Y. May 7, 2007) (quoting Gavenda v. Orleans Cnty., No. 95-CV-0251E (SC), 1996 WL 377091, at *1 (W.D.N.Y. June 19, 1996)).

Judged by these standards, defendant's motion to reopen fact discovery cannot succeed. Defendant claims that as a result of Hammer's testimony, defendant shaped its discovery strategy based on its understanding that plaintiffs do not fly aircraft that have been repaired, and that therefore defendant showed good cause by "immediately" requesting to reopen discovery "upon observance of the repair." See Def. Reply at 2 & n.2. Defendant's argument is flawed for several reasons.

First, Hammer made clear throughout his testimony that he was not knowledgeable as to structural damage or related repairs. See, e.g., Deposition Testimony of Dieter Hammer (Mar. 5, 2014) ("Hammer Tr.") at 8, 12, DE #87-8. In fact, it was his inability to speak to such issues that prompted defendant to move to compel plaintiffs to produce a second Rule 30(b)(6) witness. See Motion for Discovery Issues (Mar. 18, 2014), DE #45 (stating that Hammer was unable to testify as to, among other things, the aircraft's Structural Repair Manual and the government's requirements for returning the aircraft to service). Plaintiffs thereafter produced Grubert to testify on these issues and, as shown below, see *infra* pp. 8-9, his testimony should have put defendant on notice that Lufthansa did fly aircraft that had been repaired. Thus, defendant's reliance on an isolated question and answer during Hammer's deposition is misplaced.

Second, Hammer's remark that "Lufthansa does not fly with repaired aircraft" was at best confused and confusing, as revealed by his testimony immediately before and after.

Hammer was initially asked whether there were "aircraft in [plaintiffs'] fleet that are presently flying with repairs that do not return the aircraft to its original specification." See Hammer Tr. at 146. Hammer replied that all of plaintiffs' aircraft are in their "original state." See id. But he was unable to elaborate on what was encompassed within the term "original" condition: a few questions later, defendant asked Hammer whether an aircraft repaired in accordance with the SRM would thereby be returned to its "original" condition. See id. at 147. Hammer responded that he could not answer that question because he is "not an engineer" and did not know who would be the appropriate person to answer that question. See id.

Hammer's admitted ignorance as to whether "original condition" encompassed SRM repairs should have alerted defendant that it could not rely on Hammer in shaping discovery on that issue; nor was it reasonable for defendant to assume that when Hammer denied that plaintiffs "fly with repaired aircraft," he was employing the same definition of "repaired" as does defendant and thereby asserting that no SRM repairs had ever been performed on plaintiffs' active fleet. Cf. Ellis v. City of N.Y., 243 F.R.D. 109, 112 (S.D.N.Y. 2007) (municipal defendant failed to show good cause to compel discovery after the court-ordered deadline, where it could not have reasonably relied on representations by plaintiff).

In any event, Grubert's testimony certainly should have put defendant on notice that Hammer's testimony was confused or mistaken. Grubert testified that if an airplane sustains structural damage, certain government-mandated inspection schedules may have to be modified. See Deposition Testimony of Andreas Grubert (Apr. 15, 2014) ("Grubert Tr.") at 118, DE #87-9. Following up on that averment, defense counsel specifically asked whether there were "aircraft in [plaintiffs'] fleet that are on such a modified inspection criteria as a

result of sustaining such structural damage?" Grubert Tr. at 119. Grubert confirmed that there were aircraft that had modified inspection schedules because of structural damage. See id. Defendant now attempts to downplay the significance of Grubert's concession, characterizing it as "a red herring" and arguing that, "[a]lthough the type of repair can influence the subsequent inspection schedule, the latter topic is completely distinct from the subject matter on which Hammer provided answers." See Def. Reply at 2. On the contrary, and especially in light of Hammer's admitted lack of knowledge on these issues, defendant should have inquired of Grubert as to whether the referenced structurally damaged aircraft with modified inspection schedules had undergone repair work, and defendant's failure to have done so cannot be said to have been diligent.

From the outset of this case, defendant has challenged the reasonableness of plaintiffs' decision to proceed with the extensive and costly repair to the D-ALCN aircraft that is the subject of this lawsuit. Yet at no time during the fact discovery period did defendant serve any interrogatories or document demands regarding other repairs to plaintiffs' fleet of aircraft for similar structural damage. Even after Grubert's deposition testimony on April 15, 2014, defendant did not seek to extend the April 25th fact discovery deadline (and the subsequent expert discovery schedule) in order to obtain documents and/or information regarding SRM repairs for damage similar to that at issue in this case. But for the fortuity of a visible repair during an aircraft inspection belatedly requested by defendants after fact discovery closed, this dispute would not now be before the Court. In these circumstances, defendant has failed to make the requisite showing of diligence to warrant reopening discovery six months after it ended.

Other factors also militate against reopening fact discovery at this late date. The expert discovery phase of this litigation has been protracted and delayed due to various disputes between the parties; to open up fact discovery at this juncture would further delay the conclusion of expert discovery in a case that has already been pending for more than two years. Defendant's purported need for the D-ALCR logs to "test the truth" of Hammer's statements regarding repaired aircraft is undercut by defendant's contention that the evidence already shows that Hammer's testimony was "untrue." See Def. Mot. at 4. As the Court predicted during the September 30 hearing, to reopen fact discovery to further explore the circumstances surrounding an entirely different repair would truly result in a "sideshow on a sideshow." Therefore, for all of these reasons, the Court declines to modify that aspect of its ruling denying defendant's request to reopen fact discovery.

Nevertheless, having considered the post-hearing submissions of the parties, the Court does alter that aspect of its September 30, 2014 ruling regarding the admissibility of the evidence gathered during that day's inspection. Upon reflection, the Court concludes that the balancing of the probative value of such evidence as against any prejudice resulting from its admission is more appropriately deferred until the time of trial; the presiding judge will then be in a position to consider the testimony already adduced at trial in assessing the admissibility of the proof in question.

## **CONCLUSION**

For the reasons stated above, the Court grants in part and denies in part defendant's motion for reconsideration of its September 30, 2014 ruling. Although the Court adheres to its ruling denying the reopening of fact discovery, it now rules that the issue of admissibility of the D-ALCR repair evidence obtained during the aircraft inspection should be determined at

the time of trial.[4]

The existing schedule remains in effect.

Any objections to the recommendations contained in this Memorandum and Order must be filed with the Honorable Raymond J. Dearie on or before **November 10, 2014**. Failure to file objections in a timely manner may waive a right to appeal the District Court order.

**SO ORDERED.**

Dated:   Brooklyn, New York
         October 24, 2014

　　　　　　　　　　　　　　　　　　　　　　　/s/ *Roanne L. Mann*
　　　　　　　　　　　　　　　　　　　　　　**ROANNE L. MANN**
　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

---

[4] In their opposition, plaintiffs request that this Court impose sanctions on defendant pursuant to 28 U.S.C. § 1927 for "unreasonably and vexatiously" multiplying the proceedings by filing its motion for reconsideration. See Pl. Opp. at 5. The Court declines to impose sanctions, as plaintiffs have not demonstrated that defendant acted in bad faith. See Enmon v. Prospect Capital Corp., 675 F.3d 138, 143 (2d Cir. 2012). Defendant properly supported its motion for reconsideration with new evidence concerning the D-ALCR repair and its position cannot be said to be so lacking in merit as to warrant an inference of bad faith.